No. 15-35174

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

LAVERA SKIN CARE N.A., INC., a Washington corporation,
and VICTOR TANG, an individual,

Plaintiffs/Appellants,

v.

LAVERANA GMBH & CO. KG, a German limited partnership,

Defendant/Appellee,

---

On Appeal from the United States District Court
for the Western District of Washington
No. 2:13-cv-02311-RSM

---

## APPELLEE'S BRIEF

---

LATHAM & WATKINS LLP
Melanie M. Blunschi
James H. Moon
David I. Adams
505 Montgomery St. Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

*Attorneys for Defendant-Appellee*
*Laverana GmbH & Co. KG,*
*a German Limited Partnership*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellee Laverana GmbH & Co. KG ("Laverana") certifies that it is a limited partnership organized under the laws of Germany.

- Laverana's unlimited liability shareholders are Haase Verwaltungs GmbH ("Haase Verwaltungs") and Claudia Haase. Haase Verwaltungs is a limited liability company organized under the laws of Germany.

- Laverana's limited liability shareholder is Laboratorium für natürliche Körperpflegemittel Krystyna Chernes-Haase GmbH & Co. KG ("Laboratorium"). Laboratorium is a limited partnership organized under the laws of Germany.

- Thomas Haase is the sole shareholder of Haase Verwaltungs, and the sole limited liability shareholder of Laboratorium. Haase Verwaltungs is the sole unlimited liability shareholder of Laboratorium.

No publicly held corporation has a 10 percent or greater interest in Laverana or any of Laverana's shareholders.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

STATEMENT OF JURISDICTION..........................................................5

ISSUES PRESENTED.............................................................................6

STATEMENT OF FACTS ........................................................................6

    I.    The Parties' German Ties....................................................6

    II.   The Parties Enter into the Distribution Agreement..............7

    III.  Disputes Arise Under the Distribution Agreement ..............9

    IV.  The District Court Dismisses Appellants' Lawsuit............11

SUMMARY OF ARGUMENT .................................................................11

ARGUMENT ........................................................................................16

    I.    The Court Reviews the District Court's *Forum Non Conveniens* Decision for a "Clear Abuse of Discretion."......................................16

    II.   The District Court Did Not Abuse Its Discretion in Granting Laverana's Motion to Dismiss on *Forum Non Conveniens* Grounds. ......................................17

        A.   Germany Provides an Adequate Alternative Forum.................17

        B.   The Public Interest Factors Weigh Heavily in Favor of Litigation in Germany............................................18

            1.   The Necessity of Applying German Law "Weighs Especially Heavily" in Favor of Dismissal. ...................19

            2.   The German Legal System Is Better Situated to Hear This Dispute.........................................24

            3.   Cost Considerations Weigh in Favor of Dismissal. .......27

i

C.      The Private Interest Factors Weigh Substantially in Favor of Litigation in Germany. ........................................................28

    1.      The District Court Considered the Residence of All Parties. ........................................................29

    2.      The District Court Properly Considered the Residence of Witnesses. ................................31

    3.      The German Forum Has Superior Access to Evidence. ........................................................34

    4.      The Costs of Bringing Witnesses to Trial Weigh in Favor of Dismissal. ...............................................36

    5.      The Enforceability of the Judgment Weighs Heavily for Dismissal. ................................................36

        a.      The Court Properly Considered Dr. Dissars' Testimony and Proffered Evidence. .....................38

        b.      Appellants Failed to Offer Any Contrary Evidence of German Law. ....................................41

        c.      The District Court Correctly Decided This Issue of German Law. .........................................43

III.    If Necessary, the District Court's Decision Should Be Affirmed on Alternative Grounds. ........................................................46

    A.      The Enforceability of the Parties' Forum-Selection Clause Should Be Determined Under German Law. ................46

        1.      Ninth Circuit Courts Have Interpreted Forum-Selection Clauses Pursuant to Choice-of-Law Provisions. ........................................................49

        2.      Sister Circuits Have Applied the Choice-of-Law Provision in Interpreting Forum-Selection Clauses. ......51

B.     Laverana is Not Subject to Personal Jurisdiction in Washington. ...............................................................54

      1.    Laverana Has Not Purposefully Availed Itself to the Washington Forum. ...................................54

      2.    Subjecting Laverana to Personal Jurisdiction in Washington Would Be Unreasonable. ...........................56

CONCLUSION ..................................................................................58

STATEMENT OF RELATED CASES ...................................................59

CERTIFICATE OF COMPLIANCE .....................................................59

DECLARATION OF SERVICE ...........................................................60

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbott Labs. v. Takeda Pharm. Co.*,
  476 F.3d 421 (7th Cir. 2007)................................................................52

*Atl. Marine Constr. Co. v. U.S. Dist. Ct.*,
  134 S. Ct. 568 (2013) ......................................................... 4, 14, 47, 48

*Benson v. JPMorgan Chase Bank, N.A.*,
  673 F.3d 1207 (9th Cir. 2012)............................................................17

*Bing Shun Li v. Holder*,
  400 F. App'x 854 (5th Cir. 2010) ......................................................23

*Blimpie Int'l v. ICA Menyforetagen AB*,
  1997 U.S. Dist. LEXIS 3950 (S.D.N.Y. Mar. 21, 1997) ....................36

*Borden, Inc. v. Meiji Milk Prods. Co., Ltd.*,
  919 F.2d 822 (2d Cir. 1990)...............................................................36

*Boston Telecomms. Grp., Inc. v. Wood*,
  588 F.3d 1201 (9th Cir. 2009).............................................................18

*Brayton Purcell LLP v. Recordon & Recordon*,
  606 F.3d 1124 (9th Cir. 2010).............................................................46

*Campbell v. Washington Dep't of Soc. & Health Servs.*,
  671 F.3d 837 (9th Cir. 2011)...............................................................46

*Carijano v. Occidental Petroleum Corp.*,
  643 F.3d 1216 (9th Cir. 2011).............................................................21

*Colonial Leasing Co. v. Pugh Bros. Garage*,
  735 F.2d 380 (9th Cir. 1984)........................................................ 49, 52

*Cook v. Champion Shipping*,
  732 F. Supp. 2d 1029 (E.D. Cal. 2010)..............................................40

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*,
  61 F.3d 696 (9th Cir. 1995).................................................................16

iv

*Crispin v. Christian Audigier, Inc.*,
   717 F. Supp. 2d 965 (C.D. Cal. 2010) ................................................................23

*Deirmenjian v. Deutsche Bank, A.G.*,
   2006 U.S. Dist. LEXIS 96772 (C.D. Cal. Sept. 11, 2006) ..................................25

*Doe 1 v. AOL LLC*,
   552 F.3d 1077 (9th Cir. 2009)..............................................................................50

*Dole Food Co. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002)..............................................................................21

*E. & J. Gallo Winery v. Andina Licores S.A.*,
   446 F.3d 984 (9th Cir. 2006)................................................................................49

*Edumoz v. Republic of Mozambique*,
   968 F. Supp. 2d 1041 (C.D. Cal. 2013) ...............................................................38

*Evergreen Marine Corp. (Taiwan) v. Global Terminal & Container Servs.*,
   2000 U.S. Dist. LEXIS 16208 (S.D.N.Y. Nov. 7, 2000).....................................39

*Exp. Global Metals, Inc. v. Memking Recycling Grp., LLC*,
   2013 U.S. Dist. LEXIS 154379 (D. Or. Sept. 26, 2013) .....................................55

*Exter Shipping, Ltd. v. Kilakos*,
   310 F. Supp. 2d 1301 (N.D. Ga. 2004) ................................................................37

*Farrell Lines v. Columbus Cello-Poly Corp.*,
   32 F. Supp. 2d 118 (S.D.N.Y. 1997).....................................................................39

*Flexible Lifeline Sys. v. Precision Lift, Inc.*,
   654 F.3d 989 (9th Cir. 2011)................................................................................46

*Future Indus. of Am. v. Advanced UV Light GmbH*,
   2010 U.S. Dist. LEXIS 90310 (D. Conn. Sept. 1, 2010) .....................................43

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984)..............................................................................25

*Gen. Engineering Corp. v. Martin Marietta Alumina, Inc.*,
   783 F.2d 352 (3d Cir. 1986).................................................................................52

*Gering v. Fraunhofer-Gesellschaft e.V.*,
  2009 U.S. Dist. LEXIS 81812 (E.D. Mich. Sept. 9, 2009).................................28

*Golden Trade v. Lee Apparel Co.*,
  143 F.R.D. 514 (S.D.N.Y. 1992) .........................................................................39

*Gray & Co. v. Firstenberg Mach. Co.*,
  913 F.2d 758 (9th Cir. 1990).............................................................................54

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ..........................................................................................16

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,
  817 F.2d 75 (9th Cir. 1987)..............................................................................48

*IDACORP, Inc. v. Am. Fiber Sys., Inc.*,
  2012 U.S. Dist. LEXIS 135049 (D. Idaho Sept. 19, 2012)...............................50

*In re Air Crash over the Taiwan Strait on May 25, 2002*,
  331 F. Supp. 2d 1176 (C.D. Cal. 2004) ............................................................33

*In re Bridgestone/Firestone Inc.*,
  190 F. Supp. 2d 1125 (S.D. Ind. 2002) ............................................................39

*Indoor Billboard Northwest Inc. v. M2 Sys. Corp*,
  922 F. Supp. 2d 1154 (D. Or. 2013) .................................................................50

*J. McIntyre Mach., Ltd. v. Nicastro*,
  131 S. Ct. 2780 (2011) ......................................................................................56

*J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co., Ltd.*,
  515 F. Supp. 2d 1258 (M.D. Fla. 2007).............................................................39

*Jinro Am., Inc. v. Secure Invs., Inc.*,
  266 F.3d 993 (9th Cir. 2001).............................................................................38

*Jones v. GNC Franchising*,
  211 F.3d 495 (9th Cir. 2000).............................................................................50

*Khadera v. ABM Indus.*,
  2011 U.S. Dist. LEXIS 152138 (W.D. Wash. Dec. 1, 2011) ..............................41

*Kilan v. Boston Scientific Corp.*,
    2011 U.S. Dist. LEXIS 35901 (N.D. Cal. Apr. 1, 2011) ......................................50

*Leetsch v. Freedman*,
    260 F.3d 1100 (9th Cir. 2001).......................................... 12, 18, 19, 24

*Lockman Found. v. Evangelical Alliance Mission*,
    930 F.2d 764 (9th Cir. 1991)..................................................30

*Loya v. Starwood Hotels & Resorts*,
    2007 U.S. Dist. LEXIS 49012 (W.D. Wash. July 6, 2007) ................................20

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001).......................................... 16, 28, 32, 35

*Manetti-Farrow, Inc. v. Gucci Am. Inc.*,
    858 F.2d 509 (9th Cir. 1988).................................. 15, 48, 49, 50, 51, 54

*Marcotte v. Micros Sys.*,
    2014 U.S. Dist. LEXIS 128054 (N.D. Cal. Sept. 11, 2014) ................................49

*Marsoner v. United States*,
    40 F.3d 959 (9th Cir. 1994)..................................................40

*Martinez v. Bloomberg LP*,
    740 F.3d 211 (2d Cir. 2014)................................................ 51, 52, 53

*Mattel, Inc. v. Greiner & Hausser GmbH*,
    354 F.3d 857 (9th Cir. 2003)..................................................18

*Mizokami Bros. of Arizona, Inc. v. Baychem Corp.*,
    556 F.2d 975 (9th Cir. 1977)..................................................30

*Myers v. Bennett Law Offices*,
    238 F.3d 1068 (9th Cir. 2001)..................................................56

*Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela*,
    575 F.3d 491 (5th Cir. 2009)..................................................40

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ........................................ 1, 11, 16, 20, 30, 33, 41

*Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*,
    489 F.3d 303 (6th Cir. 2007)...................................................................53

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)......................................................... 15, 54

*Sigma Six Techs., Inc. v. Nagarro, Inc.*,
    2009 U.S. Dist. LEXIS 58685 (N.D. Cal. July 9, 2009).......................50

*Siren, Inc. v. Firstline Sec., Inc.*,
    2006 U.S. Dist. LEXIS 31903 (D. Ariz. May 17, 2006) ......................50

*Stellia Ltd. v. B+S Card Serv. GmbH*,
    2013 U.S. Dist. LEXIS 40095 (D. Nev. Mar. 21, 2013) ........................ 19, 43, 50

*Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp.*,
    161 F.3d 314 (5th Cir. 1998)...................................................................39

*Transportes Aereos Pegaso v. Bell Helicopter Textron, Inc.*,
    623 F. Supp. 2d 518 (D. Del. 2009)........................................................39

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006)................................................................17

*Vivendi S.A. v. T-Mobile USA, Inc.*,
    2008 U.S. Dist. LEXIS 118529 (W.D. Wash. June 5, 2008) ...............20

*Walsh v. Nev. Dep't of Human Res.*,
    471 F.3d 1033 (9th Cir. 2006)................................................................24

*Wash. Shoe Co. v. A-Z Sporting Goods Inc.*,
    704 F.3d 668 (9th Cir. 2012)......................................................... 16, 56

*Whittaker Corp. v. Execuair Corp.*,
    953 F.2d 510 (9th Cir. 1992)..................................................................24

*Yavuz v. 61 MM, Ltd.*,
    465 F.3d 418 (10th Cir. 2006)................................................................51

## STATUTES

28 U.S.C. § 1291..........................................................................................5

28 U.S.C. § 1332(a)(2)..................................................................................5

## RULES

Fed. R. Civ. P. 44.1 ............................................................... 13, 38, 39, 40

Fed. R. Civ. P. 45(c)............................................................................35

W.D. Wash. L.R. 7(g) .........................................................................41

W.D. Wash. L.R. 7(h) .........................................................................42

# INTRODUCTION

There is no absolute right to litigate in the United States. To the contrary, if a foreign jurisdiction provides an adequate alternative forum for litigation, and when considerations of public and private interests favor litigation elsewhere, courts are vested with substantial discretion to dismiss under the doctrine of *forum non conveniens*. Based on these considerations, the district court appropriately determined that this case—involving a contractual dispute under German law, based on a German-language contract entered into in Germany, subject to a forum-selection clause requiring litigation in Germany, between parties with German principals, and involving key witnesses who live in Germany—belongs in Germany. Appellants Lavera Skin Care N.A., Inc. ("LSC") and Victor Tang's (collectively, "Appellants") sole argument on appeal is that the district court erred in weighing the panoply of applicable private and public interest factors (nine to one in favor of litigation in Germany). The appeal should be denied because Appellants provide no basis to question the district court's decision, which is entitled to "substantial deference," and should not be disturbed absent a "clear abuse of discretion." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

The parties' relationship began in the 1990s, when LSC's principal, Ulrike Jacob, approached Appellee Laverana GmbH & Co. KG's ("Laverana") in Germany for permission to distribute Laverana's cosmetic products in North

1

America.  Before then, Laverana's cosmetics were neither sold nor available in the United States.  As Appellants acknowledge, Laverana was wary of Mrs. Jacob's proposal.  Laverana ultimately agreed to do business with Mrs. Jacob, a German citizen fluent in the German language, after she promised, among other things, that she would take possession of Laverana's products in Germany and sell them for her company's account and risk in the United States through her company, then based in Germany.

These restrictions were memorialized in a German-language Distribution Agreement executed by LSC and Laverana in Germany.  The contract expressly includes both (1) a forum-selection clause mandating litigation in Germany, and (2) a choice-of-law provision providing for the application of German law in any legal dispute between the parties.  In contravention of these plain terms, however, when disputes arose between the companies in 2010, Appellants decided to file suit in the United States (after an unsuccessful mediation in Germany).  In response to LSC's tactical maneuver, Laverana moved to dismiss the action based on *forum non conveniens* grounds, and the district court agreed that this matter belongs in Germany.

On appeal, much of Appellants' briefing merely quibbles with details in connection with the fact-intensive ten-factor test applied by the Court.  Appellants contest the number of material witnesses in each location, how many German

versus English-language documents are implicated, and how many months it would take to get to trial in each forum. In making these arguments, Appellants miss the forest for the trees: while each of these factors was considered by the district court, the eventual decision was primarily driven by several key factors for which Appellants cannot claim error.

- Appellants concede that German substantive law will govern the parties' dispute and apply to all aspects of the litigation, whether it takes place in Germany or the United States;

- Appellants concede that the factfinder will have to construe the meaning of the German-language contract at the heart of this dispute, that a substantial amount of documentary evidence is drafted in German, and that key non-party witnesses reside in Germany, beyond the reach of United States courts; and

- Even if Appellants can obtain a favorable judgment in the United States, the weight of evidence shows that it would be unenforceable against Laverana in Germany (where its assets are located).

These factors preclude any possible finding that the district court abused its discretion. The district court's decision should be affirmed and this case dismissed in favor of litigation in Germany.

*     *     *

In any event, if the Court finds that the district court erred in making its *forum non conveniens* determination, it should still affirm the decision to dismiss this action on two separate independent grounds.

First, under the Supreme Court's recent decision in *Atlantic Marine Construction Co. v. U.S. District Court*, 134 S. Ct. 568, 579 (2013), a mandatory forum-selection clause is to be "given controlling weight in all but the most exceptional cases" in a *forum non conveniens* analysis. The district court incorrectly held that the forum-selection clause in this action, which requires litigation in Germany, was permissive instead of mandatory because it applied United States law as opposed to German law to interpret the provision. The court erred because the parties' contract also included a choice-of-law provision providing for the application of German law. As stated in numerous cases, including three Courts of Appeals decisions that have considered this exact issue, a forum-selection clause should be interpreted based on the law agreed to by the parties, as opposed to United States law, if there is a valid choice-of-law provision as in this case.

Second, Laverana is not subject to personal jurisdiction in Washington. Laverana did not purposefully avail itself to the Washington forum through the Distribution Agreement, which constituted Laverana's sole material contact with

4

the United States. The Distribution Agreement selects Germany as the forum for any litigation, limits Laverana's obligations to making products available to LSC in Germany, and provides Laverana with no control over where or how LSC marketed or sold the products in the United States. Given Laverana's minimal contacts with the forum, this Court can affirm the district court's dismissal based on the district court's lack of personal jurisdiction over Laverana.

In all events, the district court's decision to dismiss Appellants' complaint should be affirmed.

## STATEMENT OF JURISDICTION

(a)     Laverana concurs with Appellants that the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). (Opening Br. 2.)

(b)     Laverana concurs with Appellants that this Court's jurisdiction arises pursuant to 28 U.S.C. § 1291. (*Id.*)

(c)     The district court entered final judgment on December 23, 2014. (ER 93.) On March 4, 2015, Appellants appealed (1) the district court's order granting Laverana's Motion to Dismiss dated December 19, 2014, and (2) the district court's order denying Appellants' Motion for Reconsideration of the December 19th order, which was dated February 5, 2014. (ER 1.)

## ISSUES PRESENTED

1.      Whether the district court clearly abused its discretion by dismissing the action on *forum non conveniens* grounds where the applicable public and private factors showed that (1) the case required the interpretation of a German-language contract governed by German law; (2) the parties agreed to a forum-selection clause designating Hanover, Germany; (3) material witnesses and documents necessary to litigate this action are in Germany; and (4) any judgment entered in the United States is not likely to be enforceable in Germany against Laverana.

2.      Whether the district court's dismissal of Appellants' case should be affirmed on alternative grounds based on (1) the district court's failure to apply the controlling legal standard for *forum non conveniens* decisions involving a forum-selection clause; or (2) the district court's lack of personal jurisdiction over Laverana.

## STATEMENT OF FACTS

### I.      The Parties' German Ties

Defendant Laverana is a German limited partnership in the business of developing, producing, and selling natural cosmetics from its principal place of business in Germany.  (ER 464.)  Laverana has no property, facilities, offices, or employees in the United States, and does not directly engage in business in

Washington.  (*Id.*)  Laverana's ultimate shareholder (Thomas Haase), unlimited

liability shareholders (Claudia Haase and Haase Verwaltungs GmbH), and limited

liability shareholder (Laboratorium für natürliche Körperpflegemittel Krystyna

Chernes-Haase GmbH & Co. KG), are all German citizens or entities.  (ER 465

¶ 8.)  None of these individuals and entities has offices, addresses, phone numbers,

bank accounts, officers, directors, or employees in Washington or the United

States.  (*Id.*)  Laverana has never before litigated in Washington or the United

States.  (ER 464 ¶ 6.)

Appellant LSC is a Washington corporation, and Appellant Tang is a

Washington resident.  (ER 751 ¶¶ 1-2.)  LSC's founders, Mrs. Jacob and Andreas

Dewor, are both German citizens who formerly lived in Germany.  (ER 466 ¶¶ 12-

13.)  Mrs. Jacob and Mr. Dewor are both fluent in German.  (*Id.* ¶ 14.)  Mrs. Jacob

and Mr. Dewor were married, but later divorced.  (*Id.* ¶ 12.)  Subsequently, Mrs.

Jacob married Mr. Tang.  (*Id.* ¶ 16.)

## II.    The Parties Enter into the Distribution Agreement

Prior to 1999, Laverana's products were not sold or marketed in the United

States.  (ER 752 ¶ 5.)  In 1999, Laverana entered into a distribution agreement with

LSC's predecessor, which was operated by Mrs. Jacob and Mr. Dewor from

Germany.  (*Id.*; ER 466 ¶ 15.)  Operating in Germany, LSC's predecessor

purchased Laverana's products, shipped them into the United States, and sold them

there.  (ER 466 ¶ 15.)  Mrs. Jacob and Mr. Dewor later chose to move the business to the United States.  (*Id.*)

In 2008, Laverana and LSC entered into two distribution agreements that covered the United States and Canada.  The United States distribution agreement (the "Distribution Agreement") at issue was negotiated, drafted, and executed in Germany.  (ER 466 ¶¶ 17-19; ER 488.)  The agreement includes a choice-of-law provision, which provides that "German law shall be applicable except for the conflict of laws provisions and the provisions of the Private International Law." (ER 466 ¶ 17; ER 487 § 13(a).)  The agreement also includes a forum-selection clause, which provides that "[t]he place of jurisdiction shall be Hanover, Germany."  (ER 487 § 13(b).)  The contract was drafted in German and includes an English translation, but it provides that only "the German version shall be binding."  (*Id.* § 15.)

The Distribution Agreement granted LSC the "right to market and sell Laverana products" in the United States.  (ER 752 ¶ 5.)  However, the agreement was specifically negotiated to end Laverana's obligations at its facilities in Germany, and Laverana had no obligation to deliver or ship its products into the United States.  Instead, the Distribution Agreement provides that LSC shall be solely responsible for the transportation of all goods "ex works" from Germany, which means that Laverana's delivery obligations ended when it placed the goods

at the disposal of LSC at Laverana's premises in Germany.  (ER 466-67 ¶¶ 17, 20; ER 481 § 3(j).)  From there, LSC would sell the products "for [its] own account, in [its] own name, and at [its] own risk on the U.S. market."  (ER 475 § 1(d).)  Laverana had no control over where LSC would decide to sell.  (*Id.*)

## III.  Disputes Arise Under the Distribution Agreement

The Complaint alleges five causes of action:  (1) breach of contract; (2) breach of covenants of good faith and fair dealing; (3) breach of fiduciary duty; (4) breach of warranty; and (5) declaratory relief.  (ER 754-56 ¶¶ 19-37.)  Each of these claims is based on the Distribution Agreement.  (ER 754-56 ¶¶ 20-21, 23-26, 28-30, 32-34, 36.)  In particular, LSC alleges that Laverana breached the Distribution Agreement by, among other things, failing to timely deliver products to LSC, wrongfully terminating the Distribution Agreement, and ceasing performance thereunder on March 27, 2013.  (ER 753 ¶¶ 8-13.)

These allegations are meritless.  In reality, Laverana terminated the Distribution Agreement based on LSC's numerous and repeated violations of its contractual obligations, including LSC's sales of products manufactured by Laverana's competitors (contrary to the express terms of the Distribution Agreement), its failure to reach agreed-upon turnover figures, and its failure to pay *over $175,000* owed to Laverana.  (ER 286-87.)  Indeed, LSC expressly repudiated its contractual obligations by stating that it had no further interest in partnering

with Laverana during a conference in Nuremberg, Germany in February 2013. (ER 288.)

Upon reaching this impasse and prior to Appellants' filing of this action, Laverana agreed to mediation in a good-faith attempt to reach resolution on these issues. (ER 287.) Specifically, in March 2013, Laverana and LSC participated in the three-day mediation in Germany. (ER 287; ER 526 ¶ 8; ER 468 ¶ 27.) LSC was represented by German counsel in connection with the mediation, which occurred before a German mediator qualified in German law. (*Id.*) LSC ultimately terminated the mediation. (*Id.*) Subsequently, on March 27, 2013, Laverana sent a notice terminating the Distribution Agreement for good cause. (ER 286; ER 468 ¶ 28; ER 517.) LSC's German counsel then asked Laverana's German counsel to accept service of their lawsuit, and Laverana agreed based on the understanding that the lawsuit would be filed in Germany. (ER 526-27 ¶¶ 10-14; ER 640-41; ER 644-45.)[1]

---

[1] Laverana and Mr. Tang also engaged in short-lived proceedings before the World Intellectual Property Organization ("WIPO") over Mr. Tang's use of an internet domain name owned by Laverana. The WIPO proceedings were dismissed because Mr. Tang invoked the Distribution Agreement. (ER 182, 186, 207.) The WIPO proceedings did not take place in the United States, but WIPO rules required appeals take place in courts at "the location of the Domain Name holder's address, as shown for the registration of the Domain Name in the concerned registrar's WHOIS database"—which showed the relevant address in Illinois. (ER 195, 199-200.) No appeal ever occurred, and no proceedings took place in Washington.

## IV. The District Court Dismisses Appellants' Lawsuit

On December 26, 2013, Appellants filed this lawsuit in the United States District Court for the Western District of Washington, in contravention of the Distribution Agreement's forum-selection clause. (ER 751.) On April 8, 2014, Laverana filed a motion to dismiss the action on *forum non conveniens* and personal jurisdiction grounds. (ER 719.) After full briefing on the issue (including an unauthorized surreply brief by Appellants) and oral argument, the Court issued an 18-page opinion granting Laverana's motion to dismiss on December 23, 2014. (ER 4, 38, 95.) Appellants moved for reconsideration of the court's decision on December 31, 2014. (ER 86.) After full briefing, the district court denied that motion on February 5, 2015. (ER 19.) On March 4, 2015, Appellants appealed the district court's orders dismissing the action and denying the request for reconsideration. (ER 1.)

## SUMMARY OF ARGUMENT

The district court's decision to dismiss this action on *forum non conveniens* grounds should be affirmed because it was not a "clear abuse of discretion." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). Given the substantial number of factors to be weighed by the district court in making its determination, the Supreme Court has explained that "[w]here the court has considered all relevant public and private interest factors" in conducting a *forum non conveniens* analysis,

and "where its balancing of these factors is reasonable, its decision deserves substantial deference." *Id.* That is the case here.

The district court correctly held that (1) Germany provides an adequate alternative forum; (2) the balance of public factors favors dismissal; and (3) the balance of private factors favors dismissal. (ER 12-17.) Appellants only contest the latter two determinations, arguing that the district court improperly weighed the applicable public and private factors when it concluded that nine of the ten applicable factors favored litigation in Germany. (ER 13-18, 21.) Appellants' arguments are meritless.

As the district court held, the public interest factors clearly weigh in favor of litigation in Germany. Crucially, there is no dispute between the parties that this case will require the application of German law to a German-language contract. (ER 32-35.) Appellants make no serious argument opposing this point. As this Court has held, and the district court properly recognized, this factor "weighs especially heavily" in favor of dismissal. (ER 16 (citing *Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001).) The remaining factors, including the relative burden of German and Washington courts, and cost considerations, *e.g.*, for translations, also favor litigation in Germany.

The private interest factors likewise weigh heavily in favor of litigation in Germany. The district court properly placed substantial importance on the

practical concern of whether a judgment against Laverana in Washington would be enforceable in Germany, where the parties agree it would have to be enforced since Laverana has no assets in the United States. Based on a consideration of relevant authorities and testimony regarding German law—as expressly allowed under the Federal Rule of Civil Procedure 44.1—the district court determined that a United States judgment likely was not enforceable in Germany as the United States court would lack jurisdiction under German law. Appellants did not come forward with any persuasive evidence to contradict this position, nor could they.

With respect to the remaining private interest factors, Appellants argue about relative costs and burdens to litigants and witnesses between the two locations, but concede that—at best—many of these convenience factors are "neutral." (Opening Br. 23, 25, 26.) Indeed, the substantial weight of evidence revealed that the primary witnesses were German citizens and fluent in the German language, that United States courts could not subpoena documentary evidence or testimony from key witnesses in Germany, and that Laverana would be prejudiced by having to litigate this action in the United States. The district court did not abuse its discretion in weighing these factors and finding that they favored dismissal.

*       *       *

Even if the district court "clearly abused its discretion" in dismissing the action (and it did not), its decision should be affirmed on alternative grounds based

on (1) the Supreme Court's recent decision in *Atlantic Marine*; and (2) the district court's lack of personal jurisdiction over Laverana.

First, the traditional *forum non conveniens* analysis does not apply if the parties have agreed to a valid forum-selection clause, as in this case. Instead, under the Supreme Court's recent decision in *Atlantic Marine Construction Co. v. U.S. District Court*, 134 S. Ct. 568, 579 (2013), the forum-selection clause is to be "given controlling weight in all but the most exceptional cases." Here, the district court erroneously disagreed with Laverana's position that the forum-selection clause in this case required the application of the *Atlantic Marine* standard. (ER 10-12.) The court arrived at this conclusion because *Atlantic Marine* only applies in cases involving mandatory forum-selection clauses, and the district court concluded that the clause in this case was permissive under United States federal law. But, under applicable law, where a contract includes both a forum-selection clause and a choice-of-law provision, the forum-selection clause should be interpreted based on the law pre-selected by the parties (*i.e.*, German law). This rule has been expressly adopted by every Court of Appeals to consider the topic, including the Second, Third, and Tenth Circuits. Under German law—the law applicable to the Distribution Agreement—the parties' forum-selection clause is mandatory, and therefore *Atlantic Marine* requires dismissal in favor of the agreed-upon German forum. The district court erroneously found this Court's decision in

*Manetti-Farrow, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 513 (9th Cir. 1988), to mandate the opposite result. But that case did not involve any choice-of-law provision. If necessary, the Court should join the other circuits to have considered this issue, and clarify that *Manetti-Farrow* is inapposite authority when the parties have agreed on the law to apply to their contractual relationship.

Second, the district court's decision should be affirmed because the court lacked personal jurisdiction over Laverana. Appellants bear the burden of establishing specific personal jurisdiction by showing that the defendant has "purposefully avail[ed] itself to the privilege of conducting activities in the forum." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-02 (9th Cir. 2004). Laverana has not purposefully availed itself to the Washington forum through the Distribution Agreement, which constitutes the sole basis for Appellants' assertion of personal jurisdiction over Laverana in Washington. First, the Distribution Agreement was negotiated, drafted, and executed wholly in Germany. Second, Laverana's obligations under the Distribution Agreement were limited to activities in Germany, where Laverana turned over its products to Appellants. Third, the Distribution Agreement covered all of the United States and Canada, and did not specifically direct any of Laverana's products to Washington. Lastly, even if Laverana had purposefully availed itself of the benefits of doing business in Washington (and it did not), the Court should not exercise jurisdiction over

Laverana because its contacts were such that the Laverana could not "reasonably anticipate being haled into court in Washington." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 679 (9th Cir. 2012).

For any and all of these reasons, the Court should affirm the district court's dismissal of this action.

## ARGUMENT

## I.   The Court Reviews the District Court's *Forum Non Conveniens* Decision for a "Clear Abuse of Discretion."

As explained by the Supreme Court in its seminal decision, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), "[t]he forum non conveniens determination is committed to the sound discretion of the trial court," and "may be reversed only when there has been a clear abuse of discretion." *Id.* at 257; *accord Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001). "[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper*, 454 U.S. at 257; *accord Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 699 (9th Cir. 1995); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (stating that the *forum non conveniens* "doctrine leaves much to the discretion of

the court . . . and experience has not shown a judicial tendency to renounce one's

own jurisdiction so strong as to result in many abuses").[2]

## II.    The District Court Did Not Abuse Its Discretion in Granting Laverana's Motion to Dismiss on *Forum Non Conveniens* Grounds.

The district court correctly held that this case should be dismissed on *forum non conveniens* grounds because (1) Germany provides an adequate alternative forum, and the balance of (2) public factors and (3) private factors favors dismissal.  (ER 9; *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1177 (9th Cir. 2006).)

### A.    Germany Provides an Adequate Alternative Forum.

Appellants concede that Germany provides an adequate alternative forum. (Opening Br. 13; ER 13.)  An alternative forum is adequate for *forum non conveniens* purposes "where the defendant is amenable to service of process and the forum provides 'some remedy' for the wrong at issue."  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006).  This low bar is easily satisfied in this case as Laverana is a German limited partnership that is amenable

---

[2] Similarly, the district court's denial of a motion for reconsideration is reviewed for an abuse of discretion.  *See Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1211 (9th Cir. 2012).  Appellants make no argument—independent of their disagreement with the district court's order granting Laverana's Motion to Dismiss—that the district court's order denying reconsideration should be reversed.  Accordingly, that decision should be affirmed on the same bases, as explained below.

to service of process in Germany (ER 464 ¶ 3; ER 528 ¶ 16), and the German legal system provides ample recourse in contractual disputes (ER 528-29 ¶¶ 17-20). Indeed, the Court, as a general rule, has held that Germany is an adequate alternative forum for litigation. *See Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 868 (9th Cir. 2003) ("Germany provides an adequate forum for resolving disputes"); *Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001) ("the German court offered an adequate alternative forum").

**B.    The Public Interest Factors Weigh Heavily in Favor of Litigation in Germany.**

In deciding a *forum non conveniens* motion, courts consider the following public interest factors:  "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum."  *Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009).  The district court correctly determined that these factors overwhelmingly weighed in favor of litigation in Germany.  (ER 16-17.)  Indeed, the only factor weighing in favor of litigation in the United States is Washington's putative interest in providing a forum for its residents, which is present in every case brought by resident plaintiffs and cannot alone be determinative without

eviscerating the *forum non conveniens* doctrine. (ER 16.) The remaining factors support dismissal of the action in favor of litigation in Germany.

### 1. The Necessity of Applying German Law "Weighs Especially Heavily" in Favor of Dismissal.

It is undisputed that this action will require the application of German law to a German-language contract. (Opening Br. 35; ER 16; ER 487 § 13(a) ("German law shall be applicable except for the conflicts of laws provisions and the provisions of the Private International Law."); *id.* § 15 ("This Agreement has been drawn up in German and English, however the German version shall be binding.").) The district court correctly held that this factor "clearly favors the German forum" based on clear Ninth Circuit guidance. (ER 16.) Specifically, the Court has previously explained that:

> [The need to apply German law] weighs especially heavily in favor of the German courts. Not only is the district court unfamiliar with German law, were it to hear the case it would be required to translate a great deal of that law from the German language, with all the inaccuracy and delay that such a project would necessarily entail.

*Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001); *see also id.* ("The German court would be more competent than a United States court to hear the claim because of its familiarity with the German language and the governing German law."); *Stellia Ltd. v. B+S Card Serv. GmbH*, No. 12-1099, 2013 U.S. Dist. LEXIS 40095, at *13 (D. Nev. Mar. 21, 2013) (because "German law will

govern the contract claim . . . any interest that the citizens of Nevada do have would be outweighed by this Court's lack of familiarity with German law."); *Vivendi S.A. v. T-Mobile USA, Inc.*, No. 06-1524, 2008 U.S. Dist. LEXIS 118529, at *41 (W.D. Wash. June 5, 2008) (this Court "is not familiar with the laws of . . . Germany"); *Loya v. Starwood Hotels & Resorts*, No. 06-0815, 2007 U.S. Dist. LEXIS 49012, at *28-29 (W.D. Wash. July 6, 2007) ("The need to apply foreign law strong[ly] favors dismissal based on *forum non conveniens*.").

Appellants' only response on appeal is that (1) German law may not differ greatly from United States law, and (2) that German law can be understood better now that an online translation is available. (Opening Br. 35-36.) These arguments are unpersuasive.

First, there is no requirement or expectation that a foreign party detail the substantive differences between the governing law and the law of the forum at the outset of the case in moving to dismiss on *forum non conveniens* grounds. To the contrary, avoiding a complex analysis of foreign law is a key reason for applying the *forum non conveniens* doctrine in the first place. *See Piper*, 454 U.S. at 251 ("*forum non conveniens* . . . is designed in part to help courts avoid conducting complex exercises in comparative law . . . the public interest factors point towards dismissal where the court would be required to 'untangle problems in conflict of laws, and in law foreign to itself'"); *Carijano v. Occidental Petroleum Corp.*, 643

F.3d 1216, 1234 (9th Cir. 2011) ("[R]esolving the conflict of law issue would involve a full blown analysis of the state interests and relative impairment. As the district court noted, *forum non conveniens* is designed so that courts can avoid such inquiries at this early stage.").

Appellants are also wrong as a factual matter: there are many material differences between German and American law, and those differences have dominated the parties' briefings to date. (*See, e.g.*, ER 105 ¶¶ 3-4; ER 111-64.) The only case Appellants can cite in support of their argument that differences in American and German law are minimal is entirely inapposite, and involved consideration of Dutch and California law outside the *forum non conveniens* context. (Opening Br. 35 (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1119 (9th Cir. 2002) (applying California's governmental interest approach to determine whether an actual conflict of laws exists between Dutch and California law)).)

Realizing this shortcoming, Appellants mischaracterize Laverana's counsel's statements during oral argument to suggest that there was an admission made that United States law and German law are "relatively similar." (Opening Br. 35 (citing ER 51).) To the contrary, counsel was only remarking that German and United States law was similar at the "basic level of what a breach of contract is," *e.g.*, with respect to contract formation and damages, but counsel explained during that very same exchange that "[t]here are material differences that will bear on the

parties' performance under these contracts." (ER 51; *see also id.* at 51-52 ("The place where there will be sticky issues of applying German law will be in looking at whether Laverana and whether Plaintiffs actually complied with their obligations under the contract, and that will require analysis both of the German health product laws and other significant aspects of German law.").)

Second, Appellants' reliance on a putative English-language transaction of German statutory law is misplaced and undermines their argument. Appellants did not introduce these authorities into evidence in the district court except by providing an internet address to a translation of the German Civil Code in its (improper) motion to strike certain evidence. (ER 428 n.1 ("The entire German Civil Code is available in English on the internet. German Civil Code (http://www.gesetze-im-internet.de/englisch_bgb/index.html)[.]").) As an initial matter, Appellants make no showing that the German Civil Code is the only body of German law that would be applicable in this dispute, or where the district court should look for guidance on those other sources of German law. (*See* ER 529 ¶¶ 21, 23.)

Additionally, there is no certification or representation regarding the accuracy of this putative translation, and the translation does not purport to be authoritative. Indeed, the website on which the translation appears provides the following disclaimer:

> Translations of these materials into languages other than German are intended solely as a convenience to the non-German-reading public. Any discrepancies or differences that may arise in translations of the official German versions of these materials are not binding and have no legal effect for compliance or enforcement purposes.

*See* http://www.gesetze-im-internet.de/Teilliste_translations.html.[3]  Appellants also claim that these online translations are provided by "no less an authority than the German Federal Ministry of Justice and Consumer Protection."  (Opening Br. 36.)  This is false.  The translations are on the German government website, but the translations themselves were "provided by the Langenscheidt Translation Service" and are updated by various civilians.  *See* http://www.gesetze-im-internet.de/englisch_bgb/index.html.

This online translation bears no indicia of reliability over that of a Wikipedia entry; both may be modified by individuals who provide no certification regarding the accuracy of the information provided.[4]  *See Bing Shun Li v. Holder*, 400 F. App'x 854, 857 (5th Cir. 2010)  ("We agree with those courts that have found Wikipedia to be an unreliable source of information."); *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 977 (C.D. Cal. 2010) ("It is unfortunate that

---

[3] If the Court is inclined to consider this uncertified website by Appellants, it should consider other parts of that same website as well.

[4] This issue with translations is magnified by the fact that Appellants take issue with testimony from Laverana's German counsel on the substance of German law. (Opening Br. 28-31.)  Under Appellants' view, the Court should rely on this online translation exclusively and disregard certified translations and guidance on German law from German-qualified lawyers made in the form of sworn affidavits.

the parties were unable to provide more authoritative evidence. . . . A review of the Wikipedia website reveals a pervasive and, for our purposes, disturbing series of disclaimers . . . [articles are] liable to be incomplete in ways that would be less usual in a more tightly controlled reference work").

Overall, Appellants present no reason to overturn the district court's finding—based on this Court's binding precedent—that the need to apply German law is a substantial consideration that "weighs especially heavily in favor of the German courts." *Leetsch*, 260 F.3d at 1103.

## 2. The German Legal System Is Better Situated to Hear This Dispute.

The second and third factors weigh the relative convenience of litigation between the competing forums. The district court found that the average time for trial in Germany would be 13.6 months as opposed to 20.1 months in the district court. (ER 17.) Appellants present on appeal—for the first time—an argument that the district court misconstrued the statistical evidence presented. (Opening Br. 36-37.) As an initial matter, this argument was waived as it was never presented to the district court. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("Issues not presented to a district court generally cannot be heard on appeal."); *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510 (9th Cir. 1992) (to

avoid waiver, "the argument must be raised sufficiently for the trial court to rule on it").

In any event, Appellants' claim is that the 13.6 month period indicated in the record refers to the average duration of proceedings that "were settled" as opposed to the period for trial.  (Opening Br. 37.)  To the contrary, the record shows that 13.6 months is the "average duration per proceeding in total that was settled *through ruling*."  (ER 700 (emphasis added).)  This figure is in contrast to the "average duration per proceeding overall" of 8.9 months, which includes non-adjudicated settlements.  (*Id.*; ER 531.)

Appellants are essentially attempting to shift the focus from time-to-trial to time-to-disposition (*i.e.*, through a non-adjudicated settlement).  (Opening Br. 37.)  But this is not the relevant inquiry for *forum non conveniens* purposes.  *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket."); *Deirmenjian v. Deutsche Bank, A.G.*, No. 06-774, 2006 U.S. Dist. LEXIS 96772, at *54-55 (C.D. Cal. Sept. 11, 2006) ("The real issue [ ] is 'whether a trial may be speedier in another court because of its less crowded docket.'  Dr. Hess opines that, in Frankfurt, the average duration of court proceedings for civil cases that are tried

rather than settled is 12.8 months. Compared with the median time of 20.5 months in this district, it is clear that one can get to trial more quickly in Frankfurt.").

Appellants also ignore other statistical metrics provided by Laverana showing that litigation would further increase the burden on the United States courts. Specifically, the district court had 2,955 total cases pending as of June 30, 2013. (ER 442.) In 2011 and 2012, the last two years for which there is data available, the number of filings in this district increased by 12.4 and 5.9 percent, respectively. (ER 446, 450.) Concurrently with this increase in filings, the Court endured substantial cuts to funding and staffing. (ER 740 ("Over the past two years, the total number of case filings in our district has grown more than 16.5 percent. However, rather than adding staff to meet growing demand, the clerk's office and the probation and pretrial services system absorbed a 10 percent budget cut . . . the district has reduced staff by 21 positions.").) As Appellants conceded in the proceedings below, the district court was "better placed than the litigants to evaluate the level of congestion it faces," and it decided that adjudication in Germany would be more efficient. (ER 423; ER 17.) The district court appropriately concluded that these considerations weighed in favor of litigation in Germany.

### 3. Cost Considerations Weigh in Favor of Dismissal.

Appellants also challenge the district court's determination that the final public factor, the cost of litigation in the competing forum, favored litigation in Germany. (ER 17.) Appellants' argument is based primarily on their erroneous position that "many" documents are in English and a majority of the material witnesses are English speakers. (*See infra* Sects. IV.C.2-3.) To the contrary, as explained below, the key documents in this case, including the definitive Distribution Agreement, are in German, and many of LSC's purported witnesses speak fluent German. (*Id.*)

Appellants appear to concede that the district court was correct in its determination that "translation would be required . . . for relevant sources of law." (ER 17.) Appellants instead argue that "[r]eliable sources of relevant German law are readily-available, in English," without referring to any portion of the record; they are presumably referring to the online translation of the German Civil Code, which, as explained above, is unauthoritative, uncertified, and lacking any indicia of reliability. (*See supra* Sect. IV.B.1.)

Appellants can assign no error to the district court's determination that the need for substantial and expensive translation services—of a considerable amount of documentary evidence and testimony, and <u>all</u> legal authorities—weighs in favor of litigation in Germany. *See Gering v. Fraunhofer-Gesellschaft e.V.*, No. 05-

73458, 2009 U.S. Dist. LEXIS 81812, at *12 (E.D. Mich. Sept. 9, 2009) ("The fact that a jury . . . will be comprised of English-speaking persons (presumably similarly lacking knowledge of the German language) likewise strongly disfavors trying this case in [this district].").

In all, the district court plainly did not abuse its discretion in holding that these public interest factors greatly weigh in favor of litigation of this dispute—based on a German-language contract under German law—in Germany.

## C. The Private Interest Factors Weigh Substantially in Favor of Litigation in Germany.

The relevant private interest factors include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Lueck*, 236 F.3d at 1145. While Appellants quibble on the margins regarding relative costs and burdens to litigants and witnesses between the two locations, they concede that even under their worldview many of these factors are "neutral." (Opening Br. 23, 25, 26.) This general balance of conveniences is overwhelmed by the intractable and impractical difficulty of litigating in Washington while facing the substantial risk that any

favorable judgment would be entirely unenforceable in Germany, where it would admittedly have to be enforced against Laverana. The Court did not abuse its discretion in considering these factors, and placing substantial weight on this practical obstacle to suit in the United States.

### 1. The District Court Considered the Residence of All Parties.

As an initial matter, Appellants place inordinate emphasis on their argument that the district court "failed to factor into the analysis" that Appellants are Washington citizens, and thus failed to provide the proper level of deference to Appellants' choice of forum. (Opening Br. 15-16.) The record reveals this assertion to be patently false. (ER 4-5 (recognizing Appellants' residence); ER 9 (repeating Plaintiffs' argument that "[a] strong presumption exists in favor of the plaintiff's choice of forum" because they are Washington residents); ER 17 ("Plaintiffs' prerogative to litigate against a foreign company in their home forum will be disturbed when all reasonable considerations lead to the conclusion that the appropriate site for the litigation is elsewhere. Such is the case here.").) The district court expressly and repeatedly considered the residence of the parties, and simply found that this consideration was outweighed by the totality of the circumstances, which substantially favored litigation in Germany. (*Id.*)

Appellants' argument amounts to nothing more than the assertion that the district court erred because it decided to dismiss a case brought by United States

residents.  But if the residence of a plaintiff were dispositive, the *forum non conveniens* doctrine would be toothless, and there would be no need to balance the many factors involved in a proper *forum non conveniens* analysis.  In actuality, a "United States citizen has no absolute right to sue in a United States court."  (ER 17 (citing *Mizokami Bros. of Arizona, Inc. v. Baychem Corp.*, 556 F.2d 975 (9th Cir. 1977)).)  "In practice, 'the cases demonstrate that defendants frequently rise to the challenge' of showing an alternative forum is the more convenient one."  *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991).  This is because, contrary to Appellants' position, a "***citizen's forum choice should not be given dispositive weight***. . . . If the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper."  *Id.* (emphasis added) (quoting *Piper*, 454 U.S. at 256 n.23).  As explained herein, and throughout its order, the district court made this precise determination based on a careful consideration of relevant interests.

## 2.      The District Court Properly Considered the Residence of Witnesses.

Appellants also take issue with the district court's balancing of conveniences for the likely witnesses in this action.  (Opening Br. 16.)[5]

In making its determination, the district court correctly emphasized Mrs. Jacob's deep connections to Germany.  (ER 14.)  Mrs. Jacob is the sole owner of Appellant LSC and the wife of Appellant Tang.  (ER 221 ¶ 7; ER 225 ¶ 21.)  It is undisputed that she is a German citizen and fluent in German.  (ER 466 ¶¶ 12-15.)  Indeed, the business relationship between Laverana and LSC began when Mrs. Jacob approached Laverana in Germany to persuade it to sell products to LSC pursuant to a distribution deal.  (ER 466 ¶ 12; ER 219 ¶ 2.)  Mrs. Jacob concedes that she made repeated trips to Germany to discuss alleged problems under the Distribution Agreement, including flying to Germany for three days of mediation on the very issues raised in this litigation.  (ER 221-22 ¶ 10; ER 224 ¶¶ 18, 20.)  Appellants now attempt to downplay these facts by claiming that Mrs. Jacob is not a litigant and that this distinction is "crucial."  (Opening Br. 23.)  To the contrary,

_____

[5] Appellants assign error to the district court's consideration of the fact that Laverana employs over 200 individuals while LSC claims it has only a single current employee in addition to its owner, Mrs. Jacob.  (Opening Br. 17; ER 14.) In rebuttal, Appellants argue that they had 20 employees in the time period of some of the events at issue in 2010 and 2011.  (Opening Br. 17.)  Even if true, this distinction is immaterial, and this factor still weighs in favor of litigation in Germany.

this distinction is irrelevant as Mrs. Jacob is admittedly a witness—indeed, Appellants' key witness (as revealed by her extensive declarations submitted in this action to date)—whose affiliations with Germany cannot be ignored as a crucial private interest factor. *See Lueck*, 236 F.3d at 1145 (considering the materiality of witness testimony). Indeed, Appellants claim Mrs. Jacob is one of only two people who currently work for LSC. (Opening Br. 17.)

Appellants also fail to credit the number of material witnesses who are only available in Germany. Laverana, its shareholders, and witnesses are German entities and citizens who have no presence in the United States and who would need English translators. (ER 465, 734-35.) Appellants also take issue with the level of detail provided regarding Laverana's witnesses. (Opening Br. 19.) But the purpose of an initial *forum non conveniens* inquiry is not to convert a pre-answer motion into a full trial on the merits. Laverana presented sufficient evidence that these individuals have material information about Appellants' claims, which are based on Laverana's alleged failure to time export products to Appellants, properly package products, and comply with regulatory requirements. (ER 753 ¶¶ 10-11.) Based on these assertions, Laverana identified the key individuals whose roles are implicated by these vague and imprecise allegations: (1) Klaudia Zach, in-house counsel; (2) Uta Landt, head of marketing since July 1,

2010 and head of export since August 2012; and (3) Karen Rinne, Laverana's former primary day-to-day contact with LSC.  (ER 469 ¶¶ 32-33; ER 736.)[6]

No more is required at this stage in the litigation, and to require more would defeat the purpose of a preliminary *forum non conveniens* motion.  *See Piper*, 454 U.S. at 258 ("[Court of Appeal] suggested that defendants seeking *forum non conveniens* dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum.  Such detail is not necessary . . . many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview.  Requiring extensive investigation would defeat the purpose of their motion."); *In re Air Crash over the Taiwan Strait on May 25, 2002*, 331 F. Supp. 2d 1176, 1198 (C.D. Cal. 2004) ("[Defendants] are not, however, required to identify each potentially critical witness, nor to submit affidavits that provide significant evidentiary detail.").  Indeed, Laverana's description of the testimony expected at this early stage is consistent with the level of detail Appellants provided.  (ER 227-29 ¶ 29.)

---

[6] The parties have identified a non-exclusive list of material German-resident witnesses who could not be compelled to trial in Washington, including Ms. Rinne, as well as non-parties Werner Oehlschläger (Laverana's former head of sales), Nadia Izmail (former employee in the sales department of Laverana), and Maia Francke (who Appellants contend was Laverana's main contact with LSC).  (ER 736; ER 221 ¶ 9; ER 225-26 ¶ 24.)  Ms. Landt also left Laverana earlier this year.

Additionally, while Appellants repeatedly ask the Court to do more than count the number of witnesses in each forum, they fail to address at all whether "material" witnesses would be willing or able to attend proceedings in Washington or Germany. For instance, Appellants' opening brief only mentions in passing Ms. Rinne, Laverana's former primary contact with Appellant LSC. (Opening Br. 18.) Appellants argue that Ms. Rinne is the sole witness that Laverana "claimed to have no control over." (*Id.* at 27.) Appellants fail to mention that they never claimed in the district court that any of their identified witness would be unable or unwilling to provide evidence in a German proceeding. (*See* ER 420-21.) There is simply no evidence in the record that any of Appellants' witnesses would be unavailable in Germany. In contrast, several of Laverana's witnesses would be unavailable to Laverana if these proceedings take place in Washington. (ER 179, 736.)

### 3. The German Forum Has Superior Access to Evidence.

Appellants argue that the locus of evidence is merely "neutral," instead of favoring litigation in Germany as determined by the district court. (Opening Br. 25; ER 14.) To the contrary, the district court correctly found that the German forum has superior access to evidence, based on the substantial volume of German documents at issue. (ER 14.) The English-language documents Appellants rely on are merely newsletters and similarly irrelevant documents. (ER 179 n.8; ER 228.) In contrast, the substantive, material communications at the heart of this case—

including the operative contract—were in German. (ER 525-28 ¶¶ 6-15; ER 540-658; ER 468 ¶ 28; ER 469 ¶ 31; ER 517.)[7]

The district court recognized that it lacked any authority to compel the production of documents in Germany. (ER 14-15.) It was undisputed in the district court that the federal subpoena power does not extend to documents of nonparty witnesses in Germany. *See* Fed. R. Civ. P. 45(c); *Lueck*, 236 F.3d at 1146-47. Additionally, Germany has objected to the fullest extent possible to assisting common law courts, including the United States courts, in any request for pre-trial discovery. (ER 532 ¶¶ 30-32.) In contrast, German courts would have full authority to compel the production of documents and evidence in Germany, and Appellants have made no argument that any of their documentary evidence cannot be produced in Germany.

---

[7] Appellants also argue that some of Laverana's witnesses "may" understand some English or that Laverana's translation needs are overstated. In support of this claim, they only point to a handful of pages of documents, which include some English-language newsletters and marketing materials but do not connect these materials to any of the alleged obligations or breaches in this case. (Opening Br. 24-25; ER 228 ¶ 29, ER 329.) Strangely, Appellants also point to the parties' Distribution Agreement, as evidence that some documents are in both German and English, while failing to acknowledge that only the German-language version is binding. (ER 308.)

## 4.    The Costs of Bringing Witnesses to Trial Weigh in Favor of Dismissal.

As Appellants suggest, the private interest factor relating to the costs of bringing witnesses to trial depends on the same considerations as those discussed above.  (Opening Br. 28.)  As discussed above, the district court did not abuse its discretion in finding that this factor favored litigation in Germany given that the balance of material witnesses and evidence are located in Germany.  (ER 15.)

## 5.    The Enforceability of the Judgment Weighs Heavily for Dismissal.

As the district court recognized, the most important private interest factor is the practical consideration of whether proceedings in the United States would result in a judgment that would be enforceable against Laverana in Germany.  (ER 15-16.)  If not, the United States proceedings could all be for naught.  This practical consideration weighs heavily for dismissal.  *See Borden, Inc. v. Meiji Milk Prods. Co., Ltd.*, 919 F.2d 822, 828 (2d Cir. 1990) (affirming dismissal where "[t]he court found further that an injunction issued in Japan clearly would be enforceable there, whereas one obtained in this country might not be."); *Blimpie Int'l v. ICA Menyforetagen AB*, No. 96-3082, 1997 U.S. Dist. LEXIS 3950, at *19-20 (S.D.N.Y. Mar. 21, 1997) ("[Lack of enforceability of a judgment] weighs heavily in favor of dismissal in this case. . . .  The fact that an injunction issued in

Sweden would clearly be enforceable there, whereas one obtained in this country would not, favors litigation of these claims in Sweden."); *Exter Shipping, Ltd. v. Kilakos*, 310 F. Supp. 2d 1301, 1325 (N.D. Ga. 2004) ("As any judgment against the Defendants in a United States court may be effectively unenforceable, this forum is not the most expedient for resolution of the Plaintiffs' claims.").

The record is undisputed that Laverana has no assets in the United States and any judgment must be enforced in Germany, if at all. (ER 534 ¶¶ 35-38; ER 713-18.) It is similarly undisputed that additional proceedings are necessary in Germany to enforce any foreign judgment, and German law bars enforcement of a foreign judgment if the foreign court does "not have jurisdiction according to German law" or the judgment would be "incompatible with the essential principles of German law." (ER 534 ¶ 37, ER 717.) The crux of the issue is thus whether the district court had jurisdiction—under *German law*. The district court held that there existed a substantial risk that any judgment would be unenforceable in Germany—which could render any proceedings in the United States a nullity—and that this factor weighed heavily in favor of dismissal. (*Id.* ("The parties thus face a substantial risk that a German court called upon to enforce a judgment by this Court would refuse to do so[.]").)

On appeal, Appellants make two related arguments: (1) that the district court gave "too much credence" to testimony from Dr. Björn-Axel Dissars on this

issue of German law, and (2) came to the wrong conclusion as to whether a United States judgment would be enforceable under German law. (Opening Br. 28.) Neither argument can save Appellants' suit from dismissal.

### a. The Court Properly Considered Dr. Dissars' Testimony and Proffered Evidence.

First, the Court properly credited the testimony of Dr. Dissars. Appellants do not appear to dispute that the district court was properly allowed to consider Dr. Dissars' declaration. Indeed, Federal Rule of Civil Procedure 44.1 expressly allows any "party" to submit any "testimony" on foreign law, no matter their interests in the underlying litigation. *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, ***the court may consider any relevant material or source, including testimony***, whether or not submitted by a party or admissible under the Federal Rules of Evidence.") (emphasis added); *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1000 (9th Cir. 2001) ("Fed. R. Civ. Pro. 44.1 gives wide latitude to a district court in determining issues of foreign law"). Appellants do not explain why the testimony of a party attorney is any less credible than that of a party or an expert paid by a party.

Pursuant to Rule 44.1, courts routinely consider testimony from attorneys to decide issues of foreign law. *See, e.g.*, *Edumoz v. Republic of Mozambique*, 968 F. Supp. 2d 1041, 1045 (C.D. Cal. 2013) (admitting attorney affidavit in *forum non*

*conveniens* analysis); *Golden Trade v. Lee Apparel Co.*, 143 F.R.D. 514, 524

(S.D.N.Y. 1992) (relying on attorney testimony and noting "that defendants were

free to proffer their own version of Norwegian law if they disagreed with his

interpretation"); *Transportes Aereos Pegaso v. Bell Helicopter Textron, Inc.*, 623

F. Supp. 2d 518, 534 (D. Del. 2009) ("One common source that judges rely upon

in determining foreign law are the affidavits of lawyers who practice law in the

country at issue, or who are from the country at issue and are familiar with its

laws."); *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co., Ltd.*, 515 F. Supp. 2d

1258, 1266 (M.D. Fla. 2007) ("Courts routinely consider affidavits submitted by

the parties in connection with motions to dismiss for *forum non conveniens*.").  The

district court properly considered Dr. Dissars' testimony on this basis.  (ER 7.)[8]

---

[8] Appellants' cited cases stand for the unremarkable proposition that courts retain full discretion to decide what, if any, authorities on foreign law to rely upon under Rule 44.1; Appellants cite no support for the proposition that considering properly presented evidence under Rule 44.1 can constitute a "clear abuse of discretion." *See In re Bridgestone/Firestone Inc.*, 190 F. Supp. 2d 1125, 1131 (S.D. Ind. 2002) (not involving an issue of foreign law under Rule 44.1 but instead a factual issue of whether a foreign country provided an adequate alternative forum); *Farrell Lines v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 128 (S.D.N.Y. 1997) (discounting lawyer affidavit because there was "little basis for assessing his expertise or weighing his opinions"); *Evergreen Marine Corp. (Taiwan) v. Global Terminal & Container Servs.*, No. 99-10544, 2000 U.S. Dist. LEXIS 16208, at *12 (S.D.N.Y. Nov. 7, 2000) (rejecting "woefully inadequate" submissions that did not offer supporting authorities); *Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp.*, 161 F.3d 314, 319 (5th Cir. 1998) ("[F]ederal judges *may* reject even the uncontradicted conclusions of an expert witness and reach their own decisions") (emphasis added).

Appellants do not argue that Dr. Dissars' testimony is irrelevant or that he is unqualified to provide testimony on this topic. (Opening Br. 31; *see also Marsoner v. United States*, 40 F.3d 959, 964 (9th Cir. 1994) ("An expert witness [testifying about foreign law] is not required to meet any special qualifications.").) Nor could they, given his undisputed familiarity with German law based on his more than 17 years of experience practicing in Germany, and reliance on German authorities in arriving at his considered conclusion on this issue. (ER 32 ¶ 2, ER 105 ¶ 2, ER 524 ¶¶ 2-4.)

Indeed, even without Dr. Dissars' testimony, the extensive evidence he attached to his declaration, with complete translations by fully certified translators (ER 109, 537), would be independently relevant and properly considered by the district court. *See* Fed. R. Civ. P. 44.1; *Cook v. Champion Shipping*, 732 F. Supp. 2d 1029, 1034 (E.D. Cal. 2010) ("the court's review of the bases for [attorney's] conclusions as well as a review of the underlying law support consideration of this evidence [despite his representation of defendant]"); *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela*, 575 F.3d 491, 498 n.8 (5th Cir. 2009) ("Northrop has not alleged that the Republic's submissions are inaccurate or misrepresent Venezuelan law in any way. Accordingly, we find that the Republic offered sufficient proof of the content of Venezuelan law."). The

district court properly considered Dr. Dissars' testimony and his evidence.[9]  (ER 15-16.)

Additionally, there are a number of problems with Appellants' implicit argument that Laverana was required to do more to establish German law.  First, Appellants essentially suggest that the parties are required to retain expert witnesses to determine threshold venue issues.  This is not the law.  Avoiding such costs and burdens are an essential reason why the *forum non conveniens* doctrine exists.  *See Piper*, 454 U.S. at 251.  Second, while assigning error to the district court for considering the testimony of an attorney that previously performed work for Laverana, Appellants do not explain why courts should insist on (more expensive) hired-gun experts to step in to perform this role.

### b. Appellants Failed to Offer Any Contrary Evidence of German Law.

Appellants claim that the district court relied heavily on Dr. Dissars' evidence, but fail to disclose that this was by necessity because Appellants failed to timely submit contrary evidence as an alternative to Dr. Dissars' position.

---

[9] Indeed, Appellants' arguments on appeal constitute a collateral attack on Dr. Dissars' testimony, which was expressly rejected by the district court.  (ER 7-8.) Specifically, Appellants' motion to strike Dr. Dissars' testimony was in direct contravention of W.D. Wash. Local Rule 7(g).  *See* ER-7; *Khadera v. ABM Indus.*, No. 08-417, 2011 U.S. Dist. LEXIS 152138, at *20 n.9 (W.D. Wash. Dec. 1, 2011) ("Because Defendants have failed to comply with Local Civil Rule 7(g), their Motion to Strike will not be considered[.]").

Specifically, ***Appellants concede that despite having had a declaration to purportedly rebut Dr. Dissars' testimony by May 2014, they inexplicably chose not to present it to the district court until after the district court granted Laverana's motion to dismiss in December 2014.***  (ER 88 ("LSC filed a surreply addressing the German law issue on May 21, 2014.  Prof. Dr. Gerhard's opinion was obtained about a week later."); ER 84 ("Dated this 26 day of May, 2014, in Stuttgart, Germany."); *see also* ER 19; ER 26.)  Appellants provided no reason why this testimony from Professor Wegen was not presented during the motion to dismiss proceedings.  Indeed, Appellants failed to bring up the Wegen declaration during oral argument on the motion to dismiss in December 2014, even when the district court directly asked Appellants' counsel directly whether a United States judgment would be enforceable under German law.  (ER 58-61.)[10]

The only other source of German law that Appellants offered in the district court was an uncertified and unauthenticated website purporting to provide a translation of German statutory law that disclaims that the translation is accurate or that the authority it translates is binding.  (*See supra* Sect. IV.B.1.)  Even if

---

[10] Appellants do not assign error to the district court's decision to not consider Professor Wegen's untimely declaration in connection with the motion for reconsideration.  Nor could they under the relevant standard.  *See* ER 19-20; W.D. Wash. L.R. 7(h) ("The court will ordinarily deny such motions in the absence of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.").

accepted, Appellants fail to explain how (or which of) their reference to the entirety of the German code answers the key questions in this case, or even applies to these factual circumstances.  In short, despite a full opportunity to contest this legal issue, Appellants failed to support its position on German law with any persuasive authorities.

        **c.**        **The District Court Correctly Decided This Issue of German Law.**

In any event, the district court's reliance on Dr. Dissars' testimony could not constitute prejudicial error because Dr. Dissars is correct:  there is a substantial and serious risk that a United States judgment against Laverana would be unenforceable against Laverana in Germany.

*Three United States district courts have considered this issue of German law and all three have endorsed Laverana's position.*  *See Future Indus. of Am. v. Advanced UV Light GmbH*, No. 09-966, 2010 U.S. Dist. LEXIS 90310, at *11, 13 (D. Conn. Sept. 1, 2010), *aff'd* 434 F. App'x 46 (2d Cir. 2011) (holding that clause stating "courts of Essen, Germany shall have jurisdiction for all disputes" is mandatory under German law and citing ZR 113/71 in support); *Stellia*, 2013 U.S. Dist. LEXIS 40095, at *17 ("Under German law the parties' selection of Frankfurt am Main, Germany as the forum for resolving disputes is mandatory and

exclusive."); ER 15-16 ("it is quite probable that a German court would indeed find this Court lacking in jurisdiction").

These cases were correctly decided. Germany's highest court on civil matters repeatedly has held that when a party agrees to jurisdiction at a location in its home country—as Laverana did here—the agreement must be interpreted to provide the exclusive forum for claims against that party. (ER 105-07 ¶¶ 3-4; ER 111-64 (citing German Federal Court of Justice (Bundesgerichtshof), No. XI ZR 34/96 (1997); German Federal Court of Justice (Bundesgerichtshof), No. VIII ZR 113/71 (1972)).)

Appellants' arguments to the contrary are unpersuasive. Even if Professor Wegen's declaration were considered, nothing therein contradicts these authorities. Indeed, Professor Wegen cites no contrary authority except a nonbinding treatise. (ER 83-84.) The most Professor Wegen's testimony states is that "it is at least arguable" that ZR 113/71, the German decision that the German authorities relied upon, was repealed by the German legislature through the enactment of a 1976 statute codifying the *contra proferentem* principle of contract interpretation. (ER 80 ¶ 4.) But the 1976 codification did not supersede any legal rule announced in ZR 113/71. Indeed, both authorities have existed side by side for decades: the Federal Court of Justice applied the "new" *contra proferentem* principle at least as early as 1952 (twenty years before its ZR 113/71 opinion). (ER 32-33 ¶ 4(b).)

German courts have also reaffirmed the rule stated in ZR 113/71 in opinions after 1976. (ER 34 ¶¶ 6-8.) As Professor Wegen admits, the principle of *contra proferentem* is an interpretative tool of last resort—*i.e.*, all other interpretative principles, including the one announced in ZR 113/71—take precedence. (ER 33 ¶ 4(c); ER 80-81 ¶ 4(a) (Prof. Wegen: "If after considering all available means of interpretation a clause still remains ambiguous, the interpretation most adverse to the party introducing the general terms and conditions shall be chosen.").)

In conclusion, the district court did not abuse its discretion in balancing the private and public interest factors and dismissing this case on *forum non conveniens* grounds. The court, after careful analysis and consideration of all relevant facts, properly found that these factors—including, in particular, the need to apply German law to a German-language contract, the parties and witnesses' deep ties to Germany, and the substantial possibility that any judgment in the United States will be held unenforceable in Germany—substantially outweighed any deference owed to Appellants' choice to prosecute this action in the United States instead of in Germany, as promised. This decision should not disturbed on appeal.

**III.  If Necessary, the District Court's Decision Should Be Affirmed on Alternative Grounds.**

The district court's decision to dismiss this case should be affirmed based on its proper balancing of *forum non conveniens* factors.  In the alternative, the district court's decision may be affirmed on any other grounds supported by the record, even if not relied upon by the district court.  *See Campbell v. Washington Dep't of Soc. & Health Servs.*, 671 F.3d 837, 842 n.4 (9th Cir. 2011).  There are two alternative bases for affirmance here:  (1) the district court's failure to apply the controlling legal standard for *forum non conveniens* decisions involving a forum-selection clause, and (2) the district court's lack of personal jurisdiction over Laverana.  The Court reviews both these issues *de novo*.  *See Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 994 (9th Cir. 2011) ("If 'the district court is alleged to have relied on an erroneous legal premise, we review the underlying issues of law de novo.'"); *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) ("A district court's rulings on personal jurisdiction . . . are reviewed de novo.").

**A.  The Enforceability of the Parties' Forum-Selection Clause Should Be Determined Under German Law.**

The traditional *forum non conveniens* analysis outlined above does not apply when the parties to a dispute previously agreed to a valid forum-selection clause.

Instead, under the Supreme Court's recent guidance, a valid forum-selection clause must be "given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co.*, 134 S. Ct. 568, 579 (2013). To ensure this result, the Court modified the *forum non conveniens* analysis in three ways:

*First*, "the plaintiff's choice of forum merits no weight." *Id.* at 581. "Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.*

*Second*, a court evaluating a defendant's motion based on the forum-selection clause "should not consider arguments about the parties' private interests." 134 S. Ct. at 582. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* Accordingly, the district court's considerations are limited to public interest factors, which will "rarely" defeat dismissal. *Id.*

*Third*, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum," a *forum non conveniens* motion "will not carry with it the original venue's choice-of-law rules." *Id.*

The "practical result" of these changes "is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 134 S. Ct. at 582. Although

it is "conceivable in a particular case" that the district court would deny a *forum non conveniens* motion, "such cases will not be common." *Id.* A defendant's motion based on a forum-selection clause should be granted "unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor" dismissal. *Id.* at 574. Under these standards, there can be no dispute that this case should be dismissed in favor of litigation in Germany. (*See supra* Sect. IV.B.)

In the proceedings below, however, the district court disagreed with Laverana's position that the forum-selection clause in this case required the application of the *Atlantic Marine* standard. (ER 10-12.) The court arrived at this conclusion because it concluded that *Atlantic Marine* only applies in cases involving mandatory forum-selection clauses, and the clause in this case was permissive under United States federal law. (*Id.* at 11 (citing *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987)).) While recognizing a purported split of authority on this issue, the court sided with the rule purportedly articulated in *Manetti-Farrow, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 513 (9th Cir. 1988), and its progeny, that federal law applies "irrespective of the [parties'] choice-of-law provision" in determining whether a forum-selection clause is permissive or mandatory. (ER 11.)[11]

_____

[11] This construction is also contrary to the plain language of the parties' choice-of-law provision, which provides that German law "shall be applicable" with

If necessary for its decision, the Court should take this opportunity to revisit its 1988 ruling in *Manetti-Farrow* and clarify that its logic does not apply in the present scenario: *i.e.*, where the parties have expressly agreed that foreign law will apply to their contractual dispute.

## 1. Ninth Circuit Courts Have Interpreted Forum-Selection Clauses Pursuant to Choice-of-Law Provisions.

Courts in the Ninth Circuit have grappled with this threshold legal issue for years. A number of courts have determined that a forum-selection clause should be construed based on the law specified by the parties in a choice-of-law provision. *See E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 994 (9th Cir. 2006) ("the contract clearly contains a California choice-of-law clause; thus, the validity of the forum selection clause should be decided by California law"); *Colonial Leasing Co. v. Pugh Bros. Garage*, 735 F.2d 380, 382 (9th Cir. 1984) (applying Oregon law based on parties' choice-of-law provision in determining enforceability of forum-selection clause); *Marcotte v. Micros Sys.*, No. 14-1372, 2014 U.S. Dist. LEXIS 128054, at *15 n.2 (N.D. Cal. Sept. 11, 2014) ("if the contract contains a choice of law provision, the forum selection clause generally is evaluated by reference to the law of the jurisdiction whose law governs the rest of

---

exceptions for "[German] conflict of laws provisions and the provisions of the Private International Law." (ER 308.) These narrow exceptions indicate the parties' intent to ensure the application of German substantive law in all circumstances and for all questions.

the contract"); *Stellia*, 2013 U.S. Dist. LEXIS 40095, at *15 (applying German law

to assess whether forum-selection clause was mandatory because "under

controlling Ninth Circuit authority, when a contract contains a choice of law

provision, the validity of the contract's forum selection clause is governed by the

jurisdiction the parties specified in the choice of law clause").

On the other hand, other Ninth Circuit courts have held that federal law

applies in all events in interpreting a forum-selection clause—despite the presence

of a forum-selection clause. *See Indoor Billboard Northwest Inc. v. M2 Sys. Corp*,

922 F. Supp. 2d 1154, 1160 (D. Or. 2013) (relying on *Manetti-Farrow*); *Kilan v.*

*Boston Scientific Corp.*, No. 10-4105, 2011 U.S. Dist. LEXIS 35901, at *14 (N.D.

Cal. Apr. 1, 2011) (same); *Sigma Six Techs., Inc. v. Nagarro, Inc.*, No. 08-5633,

2009 U.S. Dist. LEXIS 58685, at *4-5 (N.D. Cal. July 9, 2009) (same); *Siren, Inc.*

*v. Firstline Sec., Inc.*, No. 06-1109, 2006 U.S. Dist. LEXIS 31903, at *13 (D. Ariz.

May 17, 2006) (same).

The decisions Appellants cite in which courts refuse to apply choice-of-law

provisions all rely on the Court's decision in *Manetti-Farrow*.[12]  This reliance is

misplaced:  as other courts have recognized, *Manetti-Farrow* did not involve a

_____

[12] Other Ninth Circuit cases merely have restated the general proposition from
*Manetti-Farrow* without analysis.  *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081
(9th Cir. 2009); *Jones v. GNC Franchising*, 211 F.3d 495, 497 (9th Cir. 2000);
*IDACORP, Inc. v. Am. Fiber Sys., Inc.*, No. 11-654, 2012 U.S. Dist. LEXIS
135049, at *3 (D. Idaho Sept. 19, 2012).

choice-of-law provision at all. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 232 (2d Cir. 2014) (Newman, J. concurring). Instead, in that case, the Court considered, as a general matter, whether federal or state law should apply for purposes of determining the enforceability of a forum-selection clause, and concluded that federal law should apply since forum-selection clauses implicate federal procedural issues with respect to venue. 858 F.2d at 513. *Manetti-Farrow* has little to say about the effect of a valid choice-of-law provision.

### 2. Sister Circuits Have Applied the Choice-of-Law Provision in Interpreting Forum-Selection Clauses.

The Second, Third, and Tenth Circuits have considered the precise question of whether a forum-selection clause should be construed based on the law selected in the parties' choice-of-law agreement. They have each concluded—in accordance with the Ninth Circuit decisions discussed above—that the choice-of-law provision should control in interpreting a forum-selection clause. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 214 (2d Cir. 2014) ("We hold that . . . where a contract contains both a valid choice-of-law clause and a forum selection clause, the substantive law identified in the choice-of-law clause governs the interpretation of the forum selection clause, while federal law governs the enforceability of the forum selection clause[.]"); *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 430 (10th Cir. 2006) ("under federal law the courts should ordinarily honor an

international commercial agreement's forum-selection provision as construed under the law specified in the agreement's choice-of-law provision"); *Gen. Engineering Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 358 (3d Cir. 1986) ("In this case, the parties specified that the contract was to be governed by the law of Maryland. Therefore, the enforceability of the forum selection clause in this case is governed by Maryland law."); *Colonial Leasing*, 735 F.2d at 382. The Seventh Circuit has taken a similar approach. *See Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007) (Posner, J.) ("Simplicity argues for determining the validity and meaning of a forum selection clause, in a case in which interests other than those of the parties will not be significantly affected by the choice of which law is to control, by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears, rather than making the court apply two different bodies of law in the same case.").

The most recent appellate opinion, *Martinez v. Bloomberg LP*, 740 F.3d 211 (2d Cir. 2014), is particularly instructive. There, the Second Circuit surveyed relevant authorities and explained the sound logic behind these decisions: "where a contract contains both a valid choice-of-law clause and a forum selection clause, the substantive law identified in the choice-of-law clause governs the interpretation of the forum selection clause, while federal law governs the enforceability." 740 F.3d at 214. The court recognized the mischief that could arise if, as here, a party

could ignore a choice-of-law provision in determining whether a forum-selection clause is mandatory or permissive:

> Applying federal law to construe a forum selection clause could frustrate the contracting parties' expectations . . . It could transform a clause that would be construed as permissive under the parties' chosen law into a mandatory clause, or vice versa, simply because the litigation was brought in a [U.S.] federal court.

*Id.* at 220; *see also Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 308 (6th Cir. 2007) ("[W]e conclude that Ohio law should apply to the interpretation of this forum selection clause. To apply federal law would undercut both aims of the *Erie* test - it would encourage forum shopping by providing differing outcomes in federal and state court.").

The Second Circuit's proffered solution is simple and logical: "[W]e see nothing to prevent a court from first interpreting the forum selection clause under the law selected by the contracting parties to determine whether it is mandatory and encompasses the claims and parties at issue in the case, before turning to federal law to determine whether the clause should be enforced." *Martinez v. Bloomberg LP*, 740 F.3d 211, 222 (2d Cir. 2014). This solution prevents forum-shopping while respecting the federal courts' ability to apply a consistent standard with respect to general questions of enforceability.

The Court should expressly adopt the Second Circuit's reasoning, and disclaim the applicability of *Manetti-Farrow* in connection with interpreting forum-selection clauses in contracts containing choice-of-law provisions.

### B.     Laverana is Not Subject to Personal Jurisdiction in Washington.

The Court's dismissal should also be affirmed because Laverana's contacts with Washington are insufficient to establish personal jurisdiction.  Appellants have conceded that they cannot establish general jurisdiction over Laverana, as the sole basis of Laverana's contacts with the United States is the Distribution Agreement.  (ER 407 n.3.)  Appellants also have failed to establish that (1) Laverana has "purposefully availed" itself of the "privilege of conducting activities in the forum" for the purposes of specific jurisdiction, or (2) that forcing Laverana to litigate in Washington would be reasonable.  *Schwarzenegger*, 374 F.3d at 802.

### 1.     Laverana Has Not Purposefully Availed Itself to the Washington Forum.

The Distribution Agreement between the parties is the sole basis for Appellants' assertion of personal jurisdiction over Laverana in Washington. However, a "contract alone does not automatically establish the requisite minimum contacts necessary for the exercise of personal jurisdiction."  *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990).  The negotiations and terms of the Distribution Agreement reveal no actions by Laverana directed at

Washington; to the contrary, the Distribution Agreement included provisions designed to avoid entanglements in the United States.

First, the Distribution Agreement was negotiated, drafted, and executed in Germany. (ER 466.) No negotiations took place in Washington and Laverana never set foot in Washington during the process. (*Id.*) As part of the negotiations, the parties expressly agreed that any dispute regarding the Distribution Agreement would be settled through litigation in Germany, under German law. *See Exp. Global Metals, Inc. v. Memking Recycling Grp., LLC*, No. 13-747, 2013 U.S. Dist. LEXIS 154379, at *7 (D. Or. Sept. 26, 2013) (finding that "choice-of-law and/or forum selection clause in an underlying contract may be instructive" in assessing purposeful availment).

Second, Laverana's obligations under the Distribution Agreement were limited to activities in Germany. Laverana's obligations ended when it placed its products at the disposal of Appellant LSC at Laverana's premises in Germany. (ER 466; ER 482 § 3(j); ER 744.) From there, LSC fully controlled the process of selling the products "for [its] own account, in [its] own name, and at [its] own risk on the U.S. market." (ER 475 § 1(d).)

Third, the Distribution Agreement covered all of the United States and Canada, and did not specifically direct any of Laverana's products to Washington. Under controlling law, these contacts are insufficient to establish jurisdiction in

Washington state.  *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2790 (2011) (in assessing authority of New Jersey court to exercise jurisdiction "it is petitioner's purposeful contacts with New Jersey, not with the United States, that alone are relevant.").  Appellants have not met their burden to demonstrate that Laverana purposefully availed itself to the benefits and privileges of the Washington forum.

## 2.  Subjecting Laverana to Personal Jurisdiction in Washington Would Be Unreasonable.

Additionally, even if Laverana had purposefully availed itself of the benefits of doing business in Washington (and it did not), the Court cannot exercise jurisdiction over Laverana unless its contacts are such that the Laverana should "reasonably anticipate being haled into court in Washington."  *Wash. Shoe*, 704 F.3d at 679.  To determine whether the exercise of jurisdiction is reasonable, the Court considers seven factors:  "(1) the extent of the defendant's purposeful injection into the forum; (2) the defendant's burdens from litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state: (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the Plaintiffs' interest in convenient and effective relief; and (7) the existence of an alternative forum."  *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001).

These factors shows that jurisdiction over Laverana would be unreasonable: (1) Laverana's injection into Washington is minimal and subject solely to the Distribution Agreement; (2) litigation in Washington would be unduly burdensome for a German entity (*see supra* Sects. IV.C.2-4); (3) an assertion of jurisdiction over Laverana would conflict with the sovereignty of Germany; (4) Washington has minimal interest in litigation based on a German contract under German law; (5) the most efficient resolution of this dispute will be reached in a German court (*see supra* Sect. IV.B.2); (6) the pre-selected German forum has already been utilized in mediation proceedings regarding these exact same claims; and (7) Germany provides an adequate alternative forum for this litigation (*see supra* Sect. IV.A).  (*See* ER 746.)

## CONCLUSION

For the foregoing reasons, Laverana respectfully requests that the Court affirm the district court's orders (1) granting Laverana's Motion to Dismiss; and (2) denying Appellants' Motion for Reconsideration.

Dated:  September 11, 2015

LATHAM & WATKINS LLP
    Melanie M. Blunschi
    James H. Moon
    David I. Adams

By  s/ Melanie M. Blunschi
    Melanie M. Blunschi

*Attorneys for Laverana/Appellee*
*Laverana GmbH & Co. KG, a*
*German Limited Partnership*

## STATEMENT OF RELATED CASES

Laverana is not aware of any case which may be deemed related pursuant to Ninth Circuit Rule 28-2.6.

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 13,288 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 14-point Times New Roman font.


Dated:  September 11, 2015              LATHAM & WATKINS LLP
                                                                 Melanie M. Blunschi
                                                                 James H. Moon
                                                                 David I. Adams

                                                                 By  s/ Melanie M. Blunschi
                                                                        Melanie M. Blunschi

                                                                 *Attorneys for Laverana/Appellee*
                                                                 *Laverana GmbH & Co. KG, a*
                                                                 *German Limited Partnership*

# DECLARATION OF SERVICE

I, Melanie Blunschi, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 505 Montgomery Street, Suite 2000, San Francisco, CA 94111.

2.      I hereby certify that on September 11, 2015, I caused to be electronically filed the foregoing document:  APPELLEE'S BRIEF with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

3.      I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 11 2015, at San Francisco, California.

_____ s/ Melanie M. Blunschi_____
                Melanie M. Blusnchi